Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | WILLIAM T. HART | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 01 C 2933 | DATE | AUGUST 9, 2001 |
| CASE TITLE | UNITED STATES OF AMERICA v. OSCAR WILLIAM OLSON, JR. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Defendant's motion to vacate sentence is denied. The Clerk of the Court is directed to enter judgment in favor of the government and against defendant denying defendant's 28 U.S.C. § 2255 motion to vacate sentence. If defendant wishes to appeal this order, he must file a Notice of Appeal to the U.S. Court of Appeals for the Seventh Circuit with the Clerk of the Court, U.S. District Court for the Northern District of Illinois, 219 S. Dearborn Street, 20th Floor, Chicago, Illinois 60604, within sixty (60) days of the entry of the judgment in this case.
(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 4 number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | AUG 1 3 2001 date docketed | 12 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | docketing deputy initials | |
| ✓ | AO 450 form mailed by judge's staff. | | | |
| | Copy to judge/magistrate judge. | FILED FOR DOCKETING 01 AUG 10 PM 5: 25 | AUG. 9, 2001 date mailed notice | |
| CW | courtroom deputy's initials | Date/time received in central Clerk's Office | MQM mailing initials | |

DOCKETED
AUG 1 3 2001

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 01 C 2933 (94 CR 555-3) |
| OSCAR WILLIAM OLSON, JR., | ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Following a jury trial with codefendants, defendant Oscar Olson was acquitted on conspiracy and wire fraud counts, but found guilty of three substantive counts of money laundering in violation of 18 U.S.C. § 1957. Initially, Olson was sentenced to concurrent terms of 120 months on two of the counts and a consecutive sentence of one month on the other count, as well as two years of supervised release, and ordered to pay $10,000,000 in restitution. On direct appeal, the Seventh Circuit initially vacated the convictions on the ground that one of the venirepersons should have been removed for cause. Although defendants instead used one of their peremptory challenges to strike that venireperson, they used all their peremptory challenges and stated that they were unable to peremptorily strike another venireperson who was on the jury. See United States v. Polichemi, 201 F.3d 858 (7th Cir. 2000) ("Polichemi I"). Shortly thereafter, however, the Supreme

Court decided United States v. Martinez-Salazar, 528 U.S. 304 (2000), in which it held that there is no basis for reversing a conviction if no disqualified person sat on the jury and the defendant received his or her full allotment of peremptory challenges. On reconsideration, the Seventh Circuit followed Martinez-Salazar and upheld the convictions. See United States v. Polichemi, 219 F.3d 698 (7th Cir.), cert. denied, 121 S. Ct. 485 (2000) ("Polichemi II"). As to Olson's sentence, though, the Seventh Circuit held that the restitution improperly included losses caused by conduct for which Olson had been acquitted. Id. at 714. That part of the sentence was vacated and Olson's case was remanded for recalculation of the amount of restitution. Id. at 715. On remand, it was determined that $75,000 was the appropriate amount of restitution to impose and an amended judgment and conviction order was entered. See United States v. Olson, 2001 WL 301212 (N.D. Ill. March 27, 2001). The amended judgment was entered on April 16, 2001. No appeal was taken from the imposition of the new sentence.

On April 24, 2001, Olson, proceeding pro se,[1] brought a motion to vacate his sentence pursuant to 28 U.S.C. § 2255. Citing Apprendi v. New Jersey, 120 S. Ct. 2348 (2000), defendant first contends his sentence was in error because the issue of relevant conduct was not submitted to the jury. He also contends that the determination as to relevant conduct was inconsistent

---

[1] Until the time of his conviction, defendant was a practicing attorney.

with his acquittal on various counts. Defendant further contends that the application of relevant conduct was improper in that it involved double counting. Last, plaintiff contends that juror Rosemary Brining should have been removed for cause. As to the aforementioned errors, defendant further contends that his trial counsel and appellate counsel provided ineffective assistance by failing to raise these issues. However, because none of the grounds raised would be a basis of relief even if they had been raised at trial or on appeal, it is unnecessary to separately consider whether counsel's representation was ineffective.

In Apprendi, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 120 S. Ct. at 2362-63. See also id. at 2355 (quoting Jones v. United States, 526 U.S. 227, 243 n.6 (1999)). Apprendi does not apply to situations such as the present case where Olson was sentenced to an unenhanced statutory maximum. United States v. Jones, 245 F.3d 645, 650-51 (7th Cir. 2001). The statutory maximum for a § 1957 violation is 120 months' imprisonment. 18 U.S.C. § 1957(b)(1). Defendant contends Apprendi applies because his total sentence of incarceration is 121 months. Olson, though, was convicted on three counts and did not receive a sentence of 121 months on any individual count. The most he received on any individual count was 120 months' incarceration. The jury found all the necessary elements of a § 1957 violation

and Olson was not sentenced beyond the statutory maximum. Apprendi does not provide any basis for relief.

Olson also contends that Apprendi requires that the relevant conduct considered for purposes of sentencing also be proven beyond a reasonable doubt. Case law is to the contrary; findings as to relevant conduct may be determined by the court by a preponderance of the evidence. Jones, 245 F.3d at 651. See also Polichemi II, 219 F.3d at 713. Polichemi II further holds that, taking into consideration the acquittals on some counts, the evidence was still sufficient to support the relevant conduct findings. Id. at 713; see also United States v. Bailey, 227 F.3d 792, 800 (7th Cir. 2000). Since already raised in direct appeal, defendant cannot reargue the issue in his present motion.

Olson's next contention is that, in determining the appropriate total offense level for sentencing guideline purposes, the consideration of relevant conduct involved double counting. Olson contends it was double counting to add two levels because the laundered funds were known to be proceeds of specified unlawful activity (U.S.S.G. § 2S1.2(b)(1)(B)) and to also add nine levels because the value of the laundered funds exceeded $10,000,000 (id. § 2S1.2(b)(2) (incorporating § 2S1.1(b)(2)(J))). The two different enhancements, though, take into account different factors. The first adjustment is for having a higher level of scienter, one that is not required to be guilty of the crime itself. See 18 U.S.C. § 1957(c); Polichemi II, 219 F.3d at 708; United States v. Hare, 49 F.3d

447, 452 (8th Cir.), cert. denied, 516 U.S. 879 (1995); U.S.S.G. § 2S1.2, comment. (backg'd.). The second adjustment is based on the amount laundered. Thus, a person who laundered more than $10,000,000 of criminally derived proceeds, but did not know the nature of the underlying unlawful activity, is deemed to be less culpable than a person such as Olson. There was no double counting involved in the calculation of Olson's total offense level. See United States v. Pennington, 168 F.3d 1060, 1068 (8th Cir. 1999). Cf. Hare, 49 F.3d at 452.

Last, Olson contends one of the jurors should have been discharged for cause because, in voir dire, she stated her husband was involved in protecting union pension rights and therefore she could not be fair in this case, which included allegations of fraud related to pension funds. The juror's pertinent testimony was as follows:

> [Defense Attorney] LOEB: You mentioned your husband's involvement in the IBEW and specifically the pension fund.
> PROSPECTIVE JUROR BRINING: Uh-huh.
> MR. LOEB: Do you have discussions with him concerning his role in the pension fund?
> PROSPECTIVE JUROR BRINING: Sure.
> MR. LOEB: Are you aware that there may be testimony in this case concerning the handling of the Chicago Housing Authority pension fund?
> PROSPECTIVE JUROR BRINING: I heard that, yes.
> MR. LOEB: Is there anything about that fact and your husband's involvement in IBEW pension fund that would cause you to be unfair to one side or the other in this case?
> PROSPECTIVE JUROR BRINING: Only because I do see the importance of the pension fund. So my answer is yes.
> MR. LOEB: Okay.
> * * *

[government attorney] KOHLER: Just a few questions, your Honor.

Ms. Brining, I think you just mentioned that . . . you see the importance of a pension fund. I am just curious about that one point. Obviously because you see the importance, you take this as a serious matter. But would you make—if you were a juror, would you make any judgment that you ultimately made as to guilt or innocence based on the evidence that you hear here in the court?

PROSPECTIVE JUROR BRINING: I don't understand what you are asking me.

MR. KOHLER: Does that just mean that you recognize this is a serious matter?

PROSPECTIVE JUROR BRINING: Yes.

MR. KOHLER: It doesn't necessarily influence how you would make a decision in the case? You would still make it based on the evidence that you hear in the courtroom?

PROSPECTIVE JUROR BRINING: Correct. I am just saying that as far as I know, he has been working on it a long time. He is trying to make changes and everything under the pension fund at his local. So I hear it all the time and I know what he is doing. So I know the importance it is to people, when they retire how important it is for them to stay in the life-style they are accustomed to.

MR. KOHLER: Thank you.

\* \* \*

[Olson defense attorney] SULLIVAN: Lastly, I think I have one follow-up.

Mrs. Brining.

PROSPECTIVE JUROR BRINING: Yes.

MR. SULLIVAN: You and your husband apparently have regular discussions about his work at the pension fund.

PROSPECTIVE JUROR BRINING: Yes.

MR. SULLIVAN: The Judge will instruct you later on in the case that you will have to refrain from discussing the case with anyone until the case is over and certainly not to discuss it with anyone at home when you get home at night. Do you think you will be able to follow that and keep what you learn about pension fund questions here to yourself until the case is over?

PROSPECTIVE JUROR BRINING: I will do my best.

> MR. SULLIVAN: Thank you.
>
> * * *
>
> [Sidebar]
> [defense attorney] SPIELFOGEL: What about the woman with the pension fund? No problem.
> MR. KOHLER: She said obviously that she takes it as a serious matter.

Tr. Vol. 2, 271-87.

Although Brining initially indicated concern about impartiality, further questioning disclosed that she considered pension benefits a serious matter and that she could be fair and decide the case on the evidence before her. Brining's testimony did not require that she be dismissed for cause. See Polichemi I, 201 F.3d at 863.[2]

Since none of the grounds raised by Olson provide a basis for overturning his conviction or sentence, they also could not support an ineffective assistance of counsel claim. Olson's motion will be denied.

IT IS THEREFORE ORDERED that defendant's motion to vacate sentence is denied. The Clerk of the Court is directed to enter judgment in favor of the government and against defendant denying defendant's 28 U.S.C. § 2255 motion to vacate sentence. If defendant wishes to appeal this order, he must file a Notice of Appeal to the United States Court of Appeals for the Seventh

---

[2]Polichemi I upholds the court's refusal to strike for cause venirepersons John Buck and David Maines. Although Polichemi II does not specifically readopt that holding, it also does not discuss the issue. Implicitly, this holding was reinstated when Polichemi II was issued.

Circuit with the Clerk of the Court, United States District Court for the Northern District of Illinois, 219 South Dearborn Street, 20th Floor, Chicago, Illinois 60604, within sixty (60) days of the entry of the judgment in this case.

ENTER:

*William T. Hort*
UNITED STATES DISTRICT JUDGE

DATED: AUGUST 9, 2001